Matthew R. Bainer, Esq. (SBN 220972)
**THE BAINER LAW FIRM**
1901 Harrison St., Suite 1100
Oakland, California 94612
Telephone:  (510) 922-1802
Facsimile:   (510) 844-7701
mbainer@bainerlawfirm.com

Attorneys for Plaintiff Alysha Freeze

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALYSHA FREEZE, individually, and on behalf of other members of the general public similarly situated, and as aggrieved employees pursuant to the Private Attorneys General Act ("PAGA"),<br><br>                  Plaintiff,<br><br>          vs.<br><br>PVH CORP., a Delaware corporation; and DOES 1 through 100, inclusive,<br><br>                  Defendants. | Case No.:  2:19-cv-01694-PSG-E<br><br>**NOTICE OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:              July 6, 2020<br>Time:             1:30 p.m.<br>Courtroom:      6A |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 6, 2020, at 1:30 p.m., or as soon thereafter as may be heard, before the Honorable Philip S. Gutierrez in Courtroom 6A of the above-entitled court, located at 350 West 1st Street, Los Angeles, California 90012-4565, Plaintiff Alysha Freeze will, and hereby does, move this Court to:

1.       Preliminarily approve the settlement described in the Joint Stipulation of Class Action Settlement, including all exhibits thereto (attached as Exhibit "A" to the Declaration of Matthew Bainer);

2.       Conditionally certify, for settlement purposes only, the proposed settlement class;

3.       Approve distribution of the proposed Notice of Class Action Settlement and Final Approval Hearing to the settlement class;

4.       Appoint Plaintiff Alysha Freeze as the class representative;

5.       Appoint The Bainer Law Firm as Class Counsel;

6.       Appoint Simpluris as the claims administrator; and

7.       Set a hearing date for final approval of the settlement.

This Motion is based upon: (1) this Notice of Motion; (2) the Memorandum of Points and Authorities in Support of Motion for Preliminary Approval of Class Action Settlement; (3) the Declaration of Matthew Bainer; (4) the Joint Stipulation of Class Action Settlement and all exhibits thereto; (5) the [Proposed] Order Granting Preliminary Approval of Class Action Settlement; and (6) other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of this Motion. Defendant does not oppose this Motion.

Dated: May 11, 2020                              THE BAINER LAW FIRM


By: */s/ Matthew R. Bainer*
Matthew R. Bainer
Attorneys for Plaintiff

Page i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................. 1

FACTS AND PROCEDURE ............................................................................ 2

    A.    Brief Overview of the Litigation ................................................... 2

    B.    Plaintiff Actively Engaged in the Discovery Process ...................... 3

    C.    The Parties Settled After a Full Day of Arm's Length Negotiations at a
          Private Mediation ....................................................................... 4

          1.    The Proposed Settlement Fully Resolves Plaintiff's Claims .................... 4

          (a)    Composition of the Settlement Class ........................................ 4

          (b)    Settlement Consideration ........................................................ 5

          2.    Formula for Calculating Settlement Payments ........................... 6

          3.    Release by the Settlement Class ............................................... 6

ARGUMENT .................................................................................................... 7

    A.    The Court Should Preliminary Approve the Settlement. .................. 7

    B.    The Settlement Was Negotiated after Plaintiff's Counsel Conducted a
          Thorough Investigation of the Factual and Legal Issues ................... 9

    C.    The Settlement Was Reached through Arm's-Length Bargaining in
          Which All Parties Were Represented by Experienced Counsel ..................... 10

    D.    The Proposed Settlement Is Reasonable Given the Strengths of
          Plaintiff's Claims and the Risks and Expense of Litigation. ........................... 10

    E.    The Proposed Class Representative Enhancement Payments Are
          Reasonable. .............................................................................. 13

    F.    The Negotiated Attorneys' Fees and Costs Are Reasonable. ........................... 14

    G.    The Proposed Class Meets the Requirements of Rule 23. ............................... 15

          1.    The Proposed Class Is Sufficiently Numerous and Ascertainable .......... 15

          2.    There are Common Questions of Law and Fact. ...................... 15

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

        3.    Plaintiff's Claims Are Typical of the Proposed Settlement Class. ......... 16

        4.    Plaintiff and Their Counsel Will Adequately Represent the

              Interests of the Proposed Settlement Class. ................................ 17

    H.    Common Issues Predominate Over Individual Issues ............................ 17

    I.    Class Settlement Is Superior to Other Available Means of

          Resolution. .................................................. 18

  J.    The Proposed Class Notice Adequately Informs Class Members About

        The Case And Proposed Settlement. .................................. 19

CONCLUSION ................................................................ 20

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997) ............................................................... 13

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001)................................................................ 14

*Blackwell v. Skywest Airlines, Inc.*, 245 F.R.D. 453 (S.D. Cal. 2007).............................. 10

*Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27 (E.D. Pa. 1985) ............................................ 12

*Brown v. Fed. Express Corp.,* 249 F.R.D. 580 (C.D. Cal. 2008) ....................................... 10

*D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ................................................. 9

*Estrella v. Freedom Fin'l Network*, 2010 U.S. Dist. LEXIS 61236

(N.D. Cal. 2010) ...................................................................................................................... 14

*Gonzalez v. Officemax N. Am.*, 2012 WL 5473764 (C.D. Cal. Nov. 5, 2012) ................ 10

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)..................................... 14, 15, 16

*In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL),

   2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5, 2008) .............................................. 9

*In re Atmel Corp. Derivative Litig.*, No. C 06-4592 JF (HRL), 2010 U.S.

   Dist. LEXIS 145551 (N.D. Cal. June 25, 2008) ............................................................... 9

*In Re Janney Montgomery Scott LLC Fin. Consultant Litig.*,

   Case No. 06-3202, 2009 U.S. Dist. LEXIS 60790 (E.D. Pa. July 16, 2009)................. 12

*Jimenez v. Allstate Ins. Co.*, 2012 WL 1366052 (C.D. Cal. Apr. 18, 2012) ................... 10

*Kenny v. Supercuts, Inc.*, 252 F.R.D. 641 (N.D. Cal. 2008) ............................................. 10

*Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012) .......................................................... 8

*Mangold v. Calif. Public Utilities Comm'n*, 67 F.3d 1470 (9th Cir. 1995)...................... 12

*Marisol v. Giuliani*, 126 F.3d 372 (2nd Cir. 1997)............................................................. 14

*Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003) .................................................................... 8

*Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523

(C.D. Cal. 2004)........................................................................................................................ 8

*Ordonez v. Radio Shack, Inc.*, 2013 U.S. Dist. LEXIS 7868

   (C.D. Cal. Jan. 17, 2013) ................................................. 10

*Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2010).................................. 14

*Rodriguez v. West Pub. Corp.*, 463 F.3d 948 (9th Cir. 2009) ............................ 11

*Stanton v. Boeing Company*, 327 F.3d 938 (9th Cir. 2003) .................................. 8

*Stevens v. Safeway, Inc.*, Case No. 05-01988, 2008 U.S. Dist. LEXIS 17119

   (C.D. Cal. Feb. 25, 2008)................................................. 12

*Torrisi v. Tuscson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993)........................ 8

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995) ................. 11

*Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114

   (E.D. Cal. 2009) .......................................................... 13

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ............................. 12

*Wolin v. Jaguar Land Rover N. Am.*, 617 F.3d 1168 (9th Cir. 2010)............................... 16

**STATE CASES**

*Aguiar v. Cintas Corp. No. 2*, 144 Cal. App. 4th 121 (2006)............................ 10

*Bell v. Farmers Ins. Exchange*, 115 Cal. App. 4th 715 (2004)........................ 12

*Brinker Restaurant Corp. v. Super. Ct.*, 53 Cal. 4th 1004 (2012)................................9, 10

*Cellphone Termination Fee Cases*, 186 Cal. App. 4th 1380 (2010) .............................. 12

*Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43 (2008) ........................................ 13

*Gentry v. Super. Ct. (Circuit City Stores)*, 42 Cal. 4th 443 (2007).................................. 10

*Jaimez v. Daiohs USA, Inc.*, 181 Cal. App. 4th 1286 (2010)........................... 10

*Richmond v. Dart Industries, Inc.*, 29 Cal. 3d 462 (1981) .............................. 10

*Sav-On Drug Stores, Inc. v. Super. Ct. (Rocher)*, 34 Cal. 4th 319 (2004) ................ 10, 12

*Smith v. Super. Ct.*, 39 Cal. 4th 77 (2006) ....................................... 10

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## OTHER AUTHORITIES

Fed. R. Civ. P. 23 .......................................................................................... 13, 16

Fed. R. Civ. P. 23(a) ............................................................................... 13, 14, 15

Fed. R. Civ. P. 23(a)(1) ....................................................................................... 13

Fed. R. Civ. P. 23(a)(2) ....................................................................................... 14

Fed. R. Civ. P. 23(a)(4) ....................................................................................... 14

Fed. R. Civ. P. 23(b)(3) ....................................................................................... 13

Fed. R. Civ. P. 23(c)(2) ....................................................................................... 17

Fed. R. Civ. P. 23(e) ............................................................................................. 8

Fed. R. Civ. P. 23(e)(1)(A) .................................................................................... 7

## TREATISES

3 Conte & Newberg, *Newberg on Class Actions* (4th ed. 2002) ........................... 8

Manual for Complex Litigation (4th ed. 2004) ..................................................... 7

Manual for Complex Litigation (Fourth) §§ 21.632-34 (2004) ........................... 13

*Manual for Complex Litigation*, Third (Fed. Judicial Center 1995) ................... 17

Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action*
     *Settlements: An Empirical Study*, J. of Empirical Legal Studies, Vol. 1
     (March 2004) ................................................................................................. 13

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiff Alysha Freeze ("Plaintiff") seeks preliminary approval of the Joint Stipulation of Class Action Settlement,[1] which, if approved, would provide significant monetary relief for approximately 7,000 non-exempt retail store employees who worked for Defendant in California.

The basic terms of the Settlement provide for the following:

(1)    A Settlement Class defined as all non-exempt employees employed by PVH Corp., PVH Retail Stores LLC, or any other subsidiary of PVH Corp. in any retail store in the state of California at any time from October 7, 2016 through the date of preliminary approval ("Class Members").[2]

(2)    A Gross Settlement Amount of $1,300,000.  The Gross Settlement Amount includes:

(a)    Individual Settlement Payments to each Class Member who does not opt-out;

(b)    Attorneys' fees of up to one-third of the Class Settlement Amount, or $433,333.00, and reasonable litigation costs and expenses, currently estimated not to exceed $25,000;

(c)    Settlement Administration Costs, currently estimated to be $33,500, to be paid to the jointly selected class action settlement administrator Simpluris ("Simpluris")[3];

(d)    A Class Representative Enhancement Payment of $5,000 to Plaintiff Alysha Freeze.

---

[1] Hereinafter, "Settlement" or "Settlement Agreement" as attached as Exhibit "A" to Declaration of Matthew Bainer in Support of Motion for Preliminary Approval ("Bainer Decl").  Unless indicated otherwise, all capitalized terms used herein have the same meaning as those defined by the Settlement Agreement.

[2] The claims brought herein were subject to a release negotiated in the previous action of *Scott-George v. PVH Corp.*, United States District Court E.D.CA Case No. 2:13-cv-00441-TLN-DB. This release cuts off Plaintiff's claims for the period prior to October 6, 2016.

[3] See, Exhibit "B" to Bainer Declaration.

(e)    A payment of $20,000 in civil penalties pursuant to the California Labor Code Private Attorneys General Act ("PAGA").

Plaintiff and Defendant negotiated the Settlement at arm's length with the assistance of experienced class action employment mediator Michael Dickstein, Esq.  The Settlement provides relief to Settlement Class Members that is fair, reasonable and valuable, especially considering the risks inherent in proceeding to trial.  The relief offered by the Settlement is particularly notable when viewed against the difficulties encountered by plaintiffs pursuing wage and hour cases (*see infra*).  Through this settlement, Class Members will not have to wait (possibly years) for relief, nor will they have to bear the risk of class certification being denied or of Defendant prevailing at trial.

For these and other reasons, the proposed Settlement satisfies all criteria for preliminary settlement approval.

## FACTS AND PROCEDURE

### A.    Brief Overview of the Litigation

On February 4, 2019, Plaintiff Alysha Freeze filed suit in the Superior Court of California for the County of Los Angeles against Defendant, alleging proposed class action claims for alleged violations of various provisions of the Labor Code and derivative claims, including alleged (1) unpaid overtime; (2) unpaid minimum wages; (3) failure to provide meal periods; (4) failure to authorize and permit rest periods; (5) failure to timely pay wages; (6) failure to provide accurate wage statements; (7) violations of the PAGA based on the above enumerated statutory violations; and (8) unfair competition.

The claims in Plaintiff's Complaint flow from the following core factual allegations:

- PVH did not consistently provide non-exempt employees with timely meal or rest breaks, as required under California Law.

- PVH did not consistently pay employees for allegedly missed meal and rest breaks.

- PVH required employees to perform additional work tasks while off-the-clock, resulting in unpaid work time.

Page 2

- As a derivative result of the above allegations, PVH failed to provide accurate pay stubs and failed to pay all terminated employees the correct amount of wages earned.

PVH denied and continues to deny any liability and wrongdoing of any kind associated with the claims in the action, and further denies that this action is appropriate for class or representative treatment for any purpose other than this Settlement.  PVH filed its Answer to Plaintiff's complaint on March 6, 2019. On March 7, 2019, PVH removed the action to the United States District Court, Central District of California, under the jurisdiction of the Class Action Fairness Act, 28 U.S.C. sections 1332, 1441 (a) and (b), and 1446(d).  (Bainer Decl. ¶ 3.)

**B.     Plaintiff Actively Engaged in the Discovery Process.**

Plaintiff has conducted sufficient investigation and discovery in the Action in order to assess the merits and risks of proceeding to trial with the claims brought herein, and the adequacy and fairness of this Settlement in light thereof.  Among other things, prior to filing her Complaint, Plaintiff's Counsel requested and was provided a copy of Plaintiff's entire personnel file and payroll records; and Defendant provided a substantial amount of informal discovery in advance of the parties' mediation, including all relevant policy and procedure documents, data points relevant to the potential damages, and time and payroll records for all Class Members for the entire relevant time period.  Additionally, in support of the Parties' settlement negotiations and mediation session, Defendant provided data and information allowing Plaintiff to determine the average hourly rate of pay for Class Members, the total approximate number of Class Members who worked during the Class Period, the total number of former employees during the Class Period and the total number of workweeks worked by Class Members during the Class Period.  (Bainer Decl. ¶ 3.)

Plaintiff's Counsel also performed an extensive independent investigation into the claims at issue, including (1) determining the suitability of the putative class representative

through interviews, background investigations, and analyses of employment files and related records; (2) researching wage-and-hour class actions involving similar claims; (3) acquiring information regarding putative Class Members' potential claims, identifying additional witnesses, and obtaining documents in support of Plaintiff's eventual Motion for Class Certification; (4) obtaining and analyzing Defendant's wage-and-hour policies and procedures; (5) researching the latest case law developments bearing on the theories of liability; (6) researching settlements in similar cases; (7) preparing valuation analyses of claims; (8) participating in a full-day private mediation session and preparing related memoranda; (9) negotiating the terms of this Settlement; (10) finalizing the Joint Stipulation of Class Action Settlement and Release; and (11) and drafting preliminary approval papers.  The document and data exchanges allowed Plaintiff's Counsel to assess the strengths and weaknesses of the claims against Defendant and the benefits of the proposed Settlement.  (Bainer Decl. ¶ 4.)

**C.      The Parties Settled After an Arm's Length Negotiation in a Private Mediation.**

After exchanging documents and conducting preliminary settlement discussions, the parties attended a mediation with Michael Dickstein, who specializes in mediating employment disputes, including wage and hour class actions.  As a result of the mediation, the parties were able to reach an agreement on the principal terms of settlement. The parties continued to discuss and negotiate the remaining details over the course of several weeks.  At all times, the Parties' negotiations were adversarial and non-collusive.  The Settlement therefore constitutes a fair, adequate, and reasonable compromise of the claims at issue.  (Bainer Decl. ¶ 5.)

**1.      The Proposed Settlement Fully Resolves Plaintiff's Claims.**

**(a)      Composition of the Settlement Class**

The proposed Settlement Class consists of all non-exempt employees employed by PVH Corp., PVH Retail Stores LLC, or any other subsidiary of PVH Corp. in any retail

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

store in the state of California at any time during the Class Period from October 7, 2016

through the date of preliminary approval. (Settlement Agreement ¶¶ 2.3-2.4)

### (b)    Settlement Consideration

Plaintiff and Defendant have agreed to settle the underlying class claims in

exchange for a Gross Settlement Amount of $1,300,000.  The Gross Settlement Amount

includes (1) settlement payments to each Class Member who does not submit a request for

exclusion ("Settlement Class Member"); (2) up to $433,333 in attorneys' fees;

(3) reasonable litigation costs and expenses, currently estimated not to exceed $25,000; (4)

Settlement Administration Expenses of approximately $33,500 (current estimate); and (5)

Class Representative Enhancement Payment of $5,000 to Plaintiff and (6) a payment of

PAGA penalties of $20,000, of which $15,000 will be paid to the LWDA and $5,000 will

be paid to each Settlement Class Member who does not submit a request for exclusion.

(Settlement Agreement ¶ 2.6, 2.10, 4.1-4.4) A premium is appropriate for Plaintiff Alysha

Freeze since she was the lead plaintiff, actively supported Plaintiff's Counsel's efforts on

behalf of the class and is executing a full release of claims as part of the Settlement

Agreement.

Subject to Court approval, the Net Settlement Amount will be distributed to all

Participating Class Members who do not opt-out of the settlement.  Because the Class

Settlement Amount is non-reversionary, 100% of the Net Settlement Amount will be paid

to Settlement Class Members, and without the need to submit claims for payment.

Payments to Settlement Class Members will be subject to Income Withholding and

Employee Portion Payroll Taxes.  To the extent there are any uncashed or undeliverable

Settlement Payment checks more than 180 calendar days after issuance, such

uncashed/undeliverable amounts will be sent to cy pres recipients Bet Tzedek Legal

Services (fifty (50) percent) and Legal Aid at Work (fifty (50) percent).  Bainer Decl., Ex.

A, at § 7.  There shall be no reversion of unclaimed funds to Defendant.

## 2. Formula for Calculating Settlement Payments

Each Settlement Class Member's share of the Net Settlement Amount will be proportional to the number of weeks he or she worked as a Class Member during the Class Period. (Settlement Agreement ¶4.4(E)) The Settlement Administrator will calculate Individual Settlement Payments as follows:

- Defendant will provide to the Settlement Administrator a list in Excel format of all Class Members, including each Class Member's name, social security number, last known address, and dates of employment during the Class Period.

- To determine each Settlement Class Member's estimated Individual Settlement Payment, the Settlement Administrator will divide the Net Settlement Amount by the total number of Workweeks for the entire Settlement Class, , and then multiply that amount by the number of workweeks worked by each Settlement Class Member during the Class Period.

- The Individual Settlement Payment will be subject to Income Withholding and Employee Portion Payroll Taxes. Defendant will pay the Employer Portion Payroll Taxes..

There are approximately 7,000 Class Members, so the average per Class Member net recovery will likely exceed $110. This average net recovery is significantly higher than many wage and hour class action settlements approved by California state and federal courts.[4]

## 3. Release by the Settlement Class

In exchange for the Class Settlement Amount, Plaintiff and Class Members who do not opt out will release the Released Claims. The Released Claims are defined as all:

---

[4] *Fukuchi v. Pizza Hut*, Case No. BC302589 (L.A. County Super. Ct.) (average net recovery of approximately $120); *Contreras v. United Food Group, LLC*, Case No. BC389253 (L.A. County Super. Ct.) (average net recovery of approximately $120); *Ressler v. Federated Department Stores, Inc.*, Case No. BC335018 (L.A. County Super. Ct.) (average net recovery of approximately $90); *Doty v. Costco Wholesale Corp.*, Case No. CV05-3241 FMC-JWJx (C.D. Cal. May 14, 2007) (average net recovery of approximately $65); *Sorenson v. PetSmart, Inc.*, Case No. 2:06-CV-02674-JAM-DAD (E.D. Cal.) (average net recovery of approximately $60); *Lim v. Victoria's Secret Stores, Inc.*, Case No. 04CC00213 (Orange County Super. Ct.) (average net recovery of approximately $35); and *Gomez v. Amadeus Salon, Inc.*, Case No. BC392297 (L.A. Super. Ct.) (average net recovery of approximately $20).

"claims, rights, demands, liabilities, penalties, fines, debts and causes of action of every nature and description, whether asserted or unasserted, known or unknown, that have been or could have been asserted against Defendant that arise out of or relate to the facts, acts, transactions, occurrences, events or omissions alleged in the Action, including all claims for wages, overtime pay, uncompensated work, missed, late, or shortened meal or rest breaks, premium pay, uncompensated security checks, and all other claims of any kind for wages, penalties, interests, costs and attorneys' fees arising from the alleged violation of any provision of California law and/or federal law, including but not limited to claims based on California Labor Code sections 201, 202, 203, 204, 206.5, 218.5, 218.6, 226, 226.3, 226.7, 510, 512, 558, 1194, 1197, 1197.1, 1198, 2698 et. seq., California Code of Regulations, Title 8 Section 11000 et. seq., the applicable Industrial Welfare Commission (IWC) Wage Orders, Business & Professions Code section 17200-17208, the Private Attorney General Act (PAGA), or any related damages, penalties, restitution, disgorgement, interest or attorneys' fees, and that arose at any time from and including October 7, 2016 through and including the date of Final Approval."

Settlement Agreement ¶ 5.1.

## ARGUMENT

### A.    The Court Should Preliminarily Approve the Settlement.

Class action settlements are subject to court review and approval under the Federal Rules of Civil Procedure. A class action may not be dismissed, compromised, or settled without the approval of the Court. FRCP Rule 23(e). The decision to approve or reject a proposed settlement is committed to the Court's sound discretion. *Dunleavy v. Nadler*, 213 F.3d 454, 458 (9th Cir.2000), citing *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1238 (9th Cir. 1998).

To protect absent class members' due process rights, approval of class action settlements involves three steps: (1) preliminary approval of the proposed settlement including (if the class has not already been certified) conditional certification of the class for settlement purposes; (2) notice to the class providing them an opportunity to exclude themselves; and (3) a final fairness hearing concerning the fairness, adequacy, and

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

reasonableness of the settlement.  *See* Fed. R. Civ. P. 23(e)(2); Manual for Complex Litigation § 21.632 (4th ed. 2004).

At this preliminary approval stage, the Court is not making a final determination on whether the settlement is fair, reasonable, and adequate, as is ultimately required by FRCP Rule 23(e). Rather, the Court need only decide whether the settlement "appears to fall within the range of possible approval." *Armstrong v. Bd. of Sch. Directors*, 616 F.2d 305, 314 (7th Cir. 1980), overruled on other grounds by *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *see also Berry v. School Dist. of City of Benton Harbor*, 184 F.R.D. 93, 97 (W.D. Mich. 1998) (the court first must determine "whether the proposed settlement is potentially approvable"); *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983) (likening preliminary approval to a finding there is "probable cause" to submit the settlement to the class and to hold a full-scale final approval hearing); *Newberg* § 11.25.  "The settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval." *Acosta v. Trans Union, LLC,* 243 F.R.D. 377, 386 (C.D. Cal. 2007) (emphasis in original).

Courts must give "proper deference" to settlement agreements, because "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between the negotiating parties, and the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988) (citations omitted.)  There is a presumption of fairness "if the settlement is recommended by class counsel after arm's-length bargaining." *Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011).  There is also "a strong judicial policy

that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008).

At preliminary approval, the Court first determines whether a class exists. *Stanton v. Boeing Company*, 327 F.3d 938, 952 (9th Cir. 2003). Then, the Court evaluates whether the settlement is within the "range of reasonableness." *See*, *generally*, 3 Conte & Newberg, *Newberg on Class Actions*, section 7.20 (4th ed. 2002) § 11.25. "Whether a settlement is fundamentally fair within the meaning of Rule 23(e) is different from the question whether the settlement is perfect in the estimation of the reviewing court." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012). To make this determination at preliminary approval, the Court may consider some or all of the following factors: (i) the extent of discovery completed, and the stage of proceedings; (ii) the strength of the Plaintiff's case and the risk, expense, complexity and likely duration of further litigation; (iii) the risk of maintaining class action status throughout trial; the amount offered in settlement; and (iv) the experience and views of counsel. *See Stanton*, 327 F.3d at 959 (citing *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003)). "Under certain circumstances, one factor alone may prove determinative in finding sufficient grounds for court approval." *Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525-526 (C.D. Cal. 2004) (*citing Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993)).

## B. The Settlement Was Negotiated after Plaintiff's Counsel Conducted a Thorough Investigation of the Factual and Legal Issues.

As set forth in greater detail above, based on an analysis of documents produced by Defendant, including policy and procedure documents, time and payroll records and information provided by relevant witnesses, Plaintiff's Counsel was able to realistically assess the value of Plaintiff's claims and intelligently engage defense counsel in settlement discussions that resulted in the proposed settlement now before the Court. (Bainer Decl. ¶3-5.) By engaging in a thorough investigation and evaluation of Plaintiff's claims,

Plaintiff's Counsel can knowledgeably opine that the Settlement, for the consideration and on the terms set forth in the Settlement Agreement, is fair, reasonable, and adequate, and is in the best interests of Class Members in light of all known facts and circumstances, including the risk of significant delay and uncertainty associated with litigation and various defenses asserted by Defendant.

### C.    The Settlement Was Reached through Arm's-Length Bargaining in Which All Parties Were Represented by Experienced Counsel.

The Settlement is the result of arm's-length negotiations.  The Parties participated in a private mediation session with Michael Dickstein, Esq., who helped to manage the Parties' expectations and reach a compromise of disputed claims.[5]  The Parties were represented by experienced class action counsel throughout the negotiations resulting in this Settlement.  Plaintiff was represented by The Bainer Law Firm, seasoned class action counsel who regularly litigate wage and hour claims through certification and on the merits, and have considerable experience settling wage and hour class actions.  (*See generally* Bainer Decl.)  Defendant was represented by Jones Day, a nationally respected defense firm.

### D.    The Proposed Settlement Is Reasonable Given the Strengths and Weaknesses of Plaintiff's Claims and the Risks and Expense of Litigation.

Plaintiff evaluated the claims in light of the risks of continued litigation in order to determine a reasonable range of class relief.  Although Plaintiff believes in the merits of her case, she also recognizes the inherent risks and uncertainty of litigation, including that

---

[5] *In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL), 2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5, 2008) (mediator's participation weighs considerably against any inference of a collusive settlement), *In re Atmel Corp. Derivative Litig.*, No. C 06-4592 JF (HRL), 2010 U.S. Dist. LEXIS 145551 (N.D. Cal. June 25, 2008) (same); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure.")  At all times, the Parties' negotiations were adversarial and non-collusive.

the Class could receive nothing, and understands the benefit of providing a significant settlement sum now. The specific risks include: (i) denial of certification; (ii) if class certification were granted, that Court may later decertify the Class; (iii) the possibility of a motion to strike or dismiss the PAGA claims; (iv) the possibility of an unfavorable, or less favorable, result at trial; (v) the possibility post-trial motions may result in an unfavorable, or less favorable, result at trial; and, (vi) the possibility of an unfavorable, or less favorable result on appeal, and the certainty that process would be protracted and expensive for both sides.

To be sure, a number of cases have found wage and hour actions to be amenable to class resolution.[6]  However, some courts have gone the other way, finding that some of the very claims at issue here—meal period, rest period, and off-the-clock violations—were not suitable for class adjudication because they raised too many individualized issues.[7]

---

[6] *See Brinker Restaurant Corp. v. Super. Ct.*, 53 Cal. 4th 1004, 1033 (2012) ("Claims alleging that a uniform policy consistently applied to a group of employees is in violation of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment . . . The theory of liability – that [the employer] has a uniform policy, and that that policy, measured against wage order requirements, allegedly violates the law - is by its nature a common question eminently suited for class treatment."). Litigation of wage and hour claims on class-wide bases (1) encourages the vigorous enforcement of wage laws (*Smith v. Super. Ct.*, 39 Cal. 4th 77, 82 (2006)); (2) "eliminates the possibility of repetitious litigation" (*Sav-on Drug Stores, Inc. v. Super. Ct. (Rocher)*, 34 Cal. 4th 319, 340 (2004)); (3) affords small claimants a method of obtaining redress (*id.*); (4) "deter[s] and redress[es] alleged wrongdoing" (*Jaimez v. Daiohs USA, Inc.*, 181 Cal. App. 4th 1286, 1298 (2010)); (5) "avoid[s] windfalls to defendants" (*Brinker*, 53 Cal. 4th at 1054); (6) avoids "inconsistent or varying adjudications" (*Aguiar v. Cintas Corp. No. 2*, 144 Cal. App. 4th 121, 129 (2006)); and (7) alleviates the concerns of employees about retaliation (*Gentry v. Super. Ct. (Circuit City Stores)*, 42 Cal. 4th 443, 462-63 (2007); *Jaimez v. Daiohs USA, Inc.*, 181 Cal. App. 4th at 1308). These policies are so strongly favored that "class certifications should not be denied [in wage and hour cases] so long as the absent class members' rights are adequately protected." *Richmond v. Dart Industries, Inc.*, 29 Cal. 3d 462, 474 (1981); *see also Sav-On, supra*, 34 Cal. 4th 319 (upholding certification of an overtime class action based on a showing that all plaintiffs performed jobs that were highly standardized, and as a result, class members performed essentially the same tasks, most of which were non-exempt as a matter of law).

[7] *See Duran v. U.S. Bank National Association*, 59 Cal. 4th 1, 31 (2014) (reversing a verdict from a class trial); *Ali v. U.S.A. Cab Ltd.*, 176 Cal. App. 4th 1333, 1341 (2009) (affirming denial of certification because employees' declarations attesting to having taken meal and rest breaks demonstrated that individualized inquiries were required to show harm); *Campbell v. Best Buy Stores, L.P.*, 2013 U.S. Dist. LEXIS 137792, at *30-41 (C.D. Cal. Sept. 20, 2013) (following *Brinker* and denying certification of

Page 11

1    Some courts have denied certification even when an employer's policies are

2    unlawful on their face.  For instance, in *Ordonez v. Radio Shack, Inc*., 2013 U.S. Dist.

3    LEXIS 7868, *35-41 (C.D. Cal. Jan. 17, 2013), the court denied certification even though

4    the plaintiff submitted evidence of a facially unlawful policy regarding rest breaks.  The

5    *Ordonez* court concluded that the predominance and superiority elements were not met

6    based on the employer's presentation of evidence of lawful compliance notwithstanding

7    the unlawful policy.  *Id*. at *38-40.

8    As the above examples illustrate, the prospect of certifying a wage and hour action

9    is always uncertain, and the risk of being denied class certification militates in favor of

10   settlement.  A denial of class certification effectively forecloses continued litigation, as

11   neither the individual nor his or her attorney will have any incentive to proceed with an

12   individual case when such small claims are at stake.  *See In re Baycol Cases I & II*, 51 Cal.

13   4th 751, 758 (2011) (explaining that a dismissal of class claims is effectively the "death

14   knell" of the case, despite survival of individual claims).  In other words, for cases where

15   individual damages are relatively small, denial of class certification results in a near-

16   complete loss for Plaintiff as well as no recovery for the employees, who are shut out of

17   the action.  Thus, if the putative Class had not been certified, the value of Plaintiff's case

18   would have been reduced to a fraction of the value of this Settlement; indeed, Defendant

19   would have likely offered no money to settle the class-wide claims if certification had

20   been denied.

---

proposed off-the-clock and rest and meal break classes due to lack of uniform policy); *Jimenez v. Allstate Ins. Co.*, 2012 U.S. Dist. LEXIS 65328 (C.D. Cal. Apr. 18, 2012) (denying motion to certify meal and rest break classes based on employer's practice of understaffing and overworking employees); *Gonzalez v. Officemax N. Am.*, 2012 U.S. Dist. LEXIS 163853 (C.D. Cal. Nov. 5, 2012) (same); *Brown v. Fed. Express Corp.*, 249 F.R.D. 580, 587-88 (C.D. Cal. 2008) (denying certification of driver meal and rest period claims based on the predominance of individual issues); *Kenny v. Supercuts, Inc.*, 252 F.R.D. 641, 645 (N.D. Cal. 2008) (denying certification on meal periods claim); *Blackwell v. Skywest Airlines, Inc.*, 245 F.R.D. 453, 467-68 (S.D. Cal. 2007) (declining to certify class action because individual issues predominated when different employee stations provided different practices with respect to meal periods).

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1    Moreover, Plaintiff would have to overcome Defendant's defenses on the merits,

2    which include that Plaintiff and the proposed class were compensated for all time worked

3    and provided meal and rest breaks in accordance with California law.  Furthermore,

4    Plaintiff's potential recovery in this action is limited by a prior class action settlement

5    which prevents any recovery prior to October 2016, and by rulings in the prior action

6    which provide Defendant with a good faith defense to many of Plaintiff's claims in this

7    Action.

8    In summary, although Plaintiff and her counsel maintain a strong belief in the

9    underlying merits of the claims, they also acknowledge the significant challenges posed by

10    continued litigation through certification and/or at the merits stage.  Accordingly, when

11    balanced against the risk and expense of continued litigation, the settlement is fair,

12    adequate, and reasonable.  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir.

13    1998) ("the very essence of a settlement is compromise, a yielding of absolutes and an

14    abandoning of highest hopes").

### E.    The Proposed Class Representative Enhancement Payment Is Reasonable.

17    At final approval, Plaintiff will request, and Defendant will not oppose, Court-

18    approval of a Class Representative Enhancement Payment of $5,000. Payments to named

19    plaintiffs for their services as class representatives are customary and generally approved.[8]

20    Plaintiff assisted Plaintiff's Counsel with the preparation of the initial and amended

21    complaint; provided Plaintiff's Counsel with material evidence regarding the claims;

22

---

23    [8] *See Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995); *Cellphone Termination
Fee Cases*, 186 Cal. App. 4th 1380, 1393 (2010); *Bell v. Farmers Ins. Exchange*, 115 Cal. App. 4th 715,

24    726 (2004) (upholding "service payments" to named plaintiffs for their efforts in bringing the case);
*Stevens v. Safeway, Inc.*, Case No. 05-01988, 2008 U.S. Dist. LEXIS 17119 (C.D. Cal. Feb. 25, 2008)

25    ($20,000 and $10,000 to two class representatives); *In Re Janney Montgomery Scott LLC Financial
Consultant Litig.*, Case No. 06-3202, 2009 U.S. Dist. LEXIS 60790 (E.D. Pa. July 16, 2009) ($20,000

26    each to three  class representatives).  The incentive award should be approved so long as it is not so high

27    [as] to create a conflict of interest between the representative and class members, or be divorced from the

28    actual value the representative provided to the action.  *Rodriguez v.* West, 463 F.3d at 959-61.

1   assisted Plaintiff's Counsel in marshalling the evidence necessary to prosecute the claims

2   on behalf of the Class; and regularly sought reports on the status of the case.

3       Plaintiff's Counsel believes that no action would likely have been taken by Class

4   Members individually, and no compensation would have been recovered for them, but for

5   Plaintiff's services on the Class's behalf.  Plaintiff has thus advanced California's public

6   policy goal of enforcing wage and hour laws.  *See Sav-On Drug Stores, Inc. v. Super. Ct.*,

7   34 Cal. 4th 319, 340 (2004).  It follows that the proposed Class Representative

8   Enhancement Payment, both for Plaintiff's services as class representative, and for her

9   general release of her own claims, is reasonable.

10      **F.    The Negotiated Attorneys' Fees and Costs Are Reasonable.**

11      At final approval, Plaintiff will seek Court-approval of the negotiated attorneys'

12  fees in the amount of one-third of the common fund, or $433,333, and litigation costs

13  currently estimated not to exceed $25,000.  (Settlement Agreement ¶4.1).

14      Plaintiff's request for attorneys' fees in the amount of one-third of the common

15  fund is reasonable under California law.  "In diversity actions, federal courts look to state

16  law in determining whether a party has a right to attorneys' fees and how to calculate those

17  fees." *Mangold v. Calif. Public Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995).

18  The state law governing the underlying claims in a diversity action "also governs the

19  award of fees." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

20  California courts routinely award attorneys' fees equalling one-third or more of the

21  potential value of the common fund.[9]

22

23

24

25  [9] *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 n.11 (2008) ("Empirical studies show that, regardless
26  whether the percentage method or the lodestar method is used, fee awards in class actions average
    around one-third of the recovery.").  Theodore Eisenberg & Geoffrey P. Miller, Attorney Fees in Class
27  Action Settlements:  An Empirical Study, J. of Empirical Legal Studies, Vol. 1, Issue 1, 27-78, March
    2004, at 35 (independent studies of class action litigation nationwide have come to a similar conclusion
28  that a one-third fee is consistent with market rates).

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

If the Court reduces the attorney fees or costs, the difference between the fees and costs requested and the fees and costs approved by the Court will be deposited into the common fund and distributed to class members.

## G.    The Proposed Class Meets the Requirements of Rule 23.

The Court has the authority to certify a provisional settlement class at the time of preliminary approval. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). A proposed settlement class is still subject to the requirements of FRCP Rule 23(a) and (b) which are "designed to protect absentees by blocking unwarranted or overbroad class definitions." *Amchem*, 521 U.S. at 620. However, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial." *Id.*

### 1.    The Proposed Class Is Sufficiently Numerous and Ascertainable.

The numerosity requirement is met where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Generally, courts will find a class sufficiently numerous if it consists of 40 or more members. *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1121 (E.D. Cal. 2009) (numerosity is presumed at a level of 40 members). Here, there are approximately 7,000 putative Class Members. This clearly exceeds any standard for numerosity.

### 2.    There are Common Questions of Law and Fact.

Commonality is satisfied "if there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality preconditions of Rule 23(a)(2) are "construed permissively." *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Commonality does not require "that every question of law or fact must be common to the class; all that Rule 23(a)(2) requires is 'a single significant question of law or fact.'" *Abdullah v. U.S. Sec. Associates, Inc.*, 731 F.3d 952, 957 (9th Cir. 2013)(quoting *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012). Here, Plaintiff alleges that all

Class Members were subject to the same wage and hour policies and practices thereby raising common questions, including, for example, whether Defendant required Plaintiff and Class Members to work off-the-clock without payment; whether Defendant deprived Plaintiff and Class Members of meal or rest periods or required them to work during meal or rest periods without compensation; and whether Defendant complied with wage reporting requirements.  Compl., ¶ 19.

### 3.    Plaintiff's Claims Are Typical of the Proposed Class.

"Like the commonality requirement, the typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting *Hanlon*, 150 F. 3d at 1020).  Thus, typicality is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (quoting *Marisol v. Giuliani*, 126 F.3d 372, 376 (2nd Cir. 1997)).

Plaintiff's wage and hour claims are typical of the proposed Settlement Class because they arise from the same factual basis and are based on the same legal theories applicable to the other Class Members.  Plaintiff alleges that she was employed as a non-exempt employee in several of Defendant's California retail stores during the course of her employment.  Compl. ¶ 22.  Plaintiff alleges that she was subjected to the same unlawful practices as the other Class Members. *See generally* Compl.  Among other things, Plaintiff alleges that she, like the rest of the Class Members, did not receive payment of all wages earned, including minimum and overtime wages and meal and rest premium wages, and did not receive complete and accurate wage statements.  Compl., ¶¶ 26-31, 47.  Likewise, Plaintiff's interests are entirely coextensive with the interests of the Class.  Accordingly, Plaintiff is typical of the Class Members she seeks to represent.

### 4.   Plaintiff and Her Counsel Will Adequately Represent the Interests of the Proposed Settlement Class.

The final Rule 23(a) requirement asks whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is satisfied if: (1) the proposed representative Plaintiff does not have conflicts of interest with the proposed class, and (2) Plaintiff is represented by qualified and competent counsel. *Hanlon*, 150 F.3d at 1020.

The Rule 23(a) adequacy requirement is met here as Plaintiff has represented putative Class Members with a focus and zeal true to the fiduciary obligation that she have undertaken, working closely with her attorneys throughout the case.

Plaintiff's Counsel also satisfies the Rule 23(a)(4) adequacy-of-counsel requirement. Plaintiff's Counsel is experienced in wage and hour class litigation and have the credential to serve as adequate class counsel. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) ("will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?").

### H.   Common Issues Predominate Over Individual Issues.

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)." *Hanlon*, 150 F.3d at 1022. The Rule 23(b)(3) predominance inquiry focuses on the relationship between the common and individual issues, testing whether the proposed classes are sufficiently cohesive to warrant adjudication by representation. *See Amchem Products, Inc.,* 521 U.S. at 623. Plaintiff identified several questions of law and fact common to her claims and to those of the putative Class. Among other things, Plaintiff alleges that the relevant policies for non-exempt employees were common to all Class Members, including that Defendant had policies and practices of requiring all employees to submit to off-the-clock security checks and to work during their rest and meal periods. Compl. ¶ 59.

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1    Likewise, the fact that the Settlement affords all Class Members an equal

2    opportunity to obtain compensation for identical claims via a standardized process

3    provides further support for the conclusion that common issues of law and fact

4    predominate and that the claims are amenable to class-wide resolution.  *See Amchem*

5    *Products, Inc. v. Windsor*, 521 U.S. at 619 (rejecting the Third Circuit's holding that the

6    requirements of Rule 23 "must be satisfied without taking into account the settlement,"

7    and finding instead that "settlement is relevant to a class certification.")

8        **I.    Class Settlement Is Superior to Other Available Means of Resolution.**

9        Given that Plaintiff seeks certification for settlement purposes only, class

10   treatment is also the superior method for resolving all claims.  "Confronted with a

11   request for settlement-only class certification, a district court need not inquire whether the

12   case, if tried, would present intractable management problems, Fed. Rule Civ. Proc.

13   23(b)(3)(D), for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

14       Resolving the claims on a class basis would (1) accomplish judicial

15   economy by avoiding multiple suits, and (2) protect the rights of persons who

16   might not be able to present claims on an individual basis. *See generally Crown,*

17   *Cork & Seal Co. v. Parker,* 462 U.S. 345 (1983).  Resolving all Class Members'

18   claims through a single class action is superior to a series of individual lawsuits. "From

19   either a judicial or litigant viewpoint, there is no advantage in individual members

20   controlling the prosecution of separate actions. There would be less litigation or settlement

21   leverage, significantly reduced resources and no greater prospect for recovery." *Hanlon*,

22   150 F.3d at 1023.

23       Addressing the allegations through a class action is superior to individual litigation

24   or any alternative methods that may exist.  This action was filed precisely because Plaintiff

25   believes those alternatives would have proven ineffective in addressing the problem on a

26   class-wide basis.  Additionally, although the value of the claims is not insignificant, the

27   amount in controversy is not nearly enough to incentivize individual action. *See Wolin*,

28

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

617 F.3d at 1175 ("Where recovery on an individual basis would be dwarfed by the cost

of litigating on an individual basis, this [superiority] factor weighs in favor of class

certification.").  As the class action device provides the superior means to effectively and

efficiently resolve this controversy, and as the other requirements of Rule 23 are each

satisfied, certification of the Settlement Class proposed by the Parties is appropriate.

### J.    The Proposed Class Notice Adequately Informs Class Members About The Case And Proposed Settlement.

The content of the proposed Notice fully complies with due process and Federal

Rule of Civil Procedure 23.  The Notice of Class Action Settlement and Fairness Hearing

("Class Notice")[10] jointly drafted and approved by the Parties, provides Settlement Class

Members with the information necessary to allow each potential member to make an

informed decision regarding his or her participation in the Settlement.  The Notice

provides information regarding the nature of the lawsuit and class claims asserted therein,

a summary of the substance of the settlement terms, the class definition, the deadlines by

which Class Members must submit Requests for Exclusion or objections and procedures

for doing so, the date for the final approval hearing; the formula used to calculate

settlement payments, a statement that the Court has preliminarily approved the settlement,

a statement that Class Members may enter an appearance through an attorney if they so

wish, a statement that the Court will exclude from the Class any member who validly

requests exclusion; and a statement that Class Members will release the settled claims and

be bound by the Court's judgment unless they opt out.  Accordingly, the Notice more than

adequately satisfies the requirements of Rule 23(c)(2).  *See, e.g., Mendoza v. Tucsson*

*School Dist. No. 1*, 623 F.2d 1338, 1351 (9th Cir. 1980) ("very general description of

the…settlement" satisfies standards).

If the Court grants preliminary approval, the Settlement Administrator will mail the

Class Notice to all Settlement Class Members via first class United States mail.

---

[10] *See*, Exhibit "B" to Bainer Decl.

(Settlement Agreement ¶3.4).  Prior to mailing, the Settlement Administrator will perform a search based on the National Change of Address Database for information to update and correct for any known or identifiable address changes.  Any Notice Packets returned to the Settlement Administrator as non-deliverable will be sent promptly to the forwarding address.  If no forwarding address is provided, the Settlement Administrator will promptly attempt to determine the correct address using a skip-trace, or other search using the name, address and/or Social Security number of the Class Member involved.  (*Id.*).  This method was negotiated by the Parties to maximize the Class Member response rate while ensuring cost effective administration of the Settlement.

The last step in the settlement approval process is the Final Approval Hearing, at which time the Court may hear all evidence and arguments necessary to evaluate the Settlement.  At the Final Approval Hearing, proponents of the Settlement may explain and describe its terms and conditions and offer arguments in support of settlement approval. Class Members may be heard in support of or in opposition to the Settlement.

## CONCLUSION

The Parties have negotiated a fair and reasonable settlement of claims.  Having appropriately presented the materials and information necessary for preliminarily approval, Plaintiff requests that the Court enter the proposed order submitted herewith and preliminarily approve the settlement.  Defendant does not oppose this request.


Dated: May 11, 2020                    THE BAINER LAW FIRM


                                       By: */s/ Matthew R. Bainer*
                                          Matthew R. Bainer
                                          Attorneys for Plaintiff

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT