Matthew R. Bainer, Esq. (SBN 220972)
**THE BAINER LAW FIRM**
1901 Harrison St., Suite 1100
Oakland, California 94612
Telephone:  (510) 922-1802
Facsimile:   (510) 844-7701
mbainer@bainerlawfirm.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALYSHA FREEZE, individually, and on behalf of other members of the general public similarly situated, and as aggrieved employees pursuant to the Private Attorneys General Act ("PAGA"),<br><br>Plaintiff,<br><br>vs.<br><br>PVH CORP., a Delaware corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 2:19-cv-01694-PSG-E<br><br>**NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:          January 4, 2021<br>Time:          1:30 p.m.<br>Courtroom:  6A |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 4, 2021, at 1:30 p.m. or as soon thereafter as counsel may be heard in Courtroom 6A of the United States District Court for the Central District of California, located at 350 West 1st Street, Los Angeles, California 90012, Plaintiff Alysha Freeze will, and hereby does, move this Court for an order granting final approval of class action settlement in the above-captioned matter.

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff respectfully moves for entry of an order:

1.    Granting final approval of the terms of the proposed class action settlement described in the Joint Stipulation re: Class Action Settlement ("Stipulation") as fair, reasonable, and adequate to all Class Members;

2.    Finding that the Notice of Class Action Settlement distributed to the Class Members pursuant to the Court's order granting preliminary approval constituted the best practicable notice to all Class Members under the circumstances;

3.    Finally certifying the class for settlement purposes only;

4.    Directing that compensation to all Settlement Class Members be effected pursuant to the terms of the Stipulation;

5.    Approving the payment to the California Labor Workforce Development Agency ("LWDA") in the amount of fifteen thousand dollars ($15,000.00);

6.    Approving the Claims Administrator's costs in the amount of forty-five thousand dollars ($45,000); and

7.    Entering final judgment in the action.

This Unopposed Motion is based on this Notice, the attached Memorandum of Points and Authorities, the accompanying declarations of Matthew Bainer and Jarrod Salinas, and any exhibits thereto, the complete files and records of this

MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

case, the Stipulation, and any other evidence or oral argument which may be considered by the Court at the time of the hearing.

DATED:  December 4, 2020              **THE BAINER LAW FIRM**

                                      By:   /s/ Matthew R. Bainer
                                      Matthew R. Bainer
                                      Attorneys for Plaintiffs

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

On July 1, 2020, this Court granted preliminary approval of the proposed class-action settlement between Plaintiff Alysha Freeze ("Plaintiff") and Defendant PVH Corp.  ("Defendant" or "PVH"). Plaintiff now seeks an order granting final approval of the Joint Stipulation re: Class Action Settlement ("Stipulation").

If finally approved, the Settlement will create an all-inclusive, non-reversionary settlement fund in the amount of $1,300,000.00. The proposed Settlement will dispose of this action in its entirety as to the following class:

> All non-exempt employees employed by PVH Corp., PVH Retail Stores LLC, or any other subsidiary of PVH Corp. in any retail store in the state of California at any time from October 7, 2016 through the date of preliminary approval (July 1, 2020), and who did not file a timely and complete request to be excluded from the Settlement.

The proposed Settlement is fair, adequate, and reasonable. The Settlement provides substantial benefits to the Class Members when balanced with the strength of Plaintiff's case and the risks and expense of further litigation. In addition, the Class Members' reaction to the Settlement has been overwhelmingly positive, as, to date, there have been no objections and only 15 timely and complete requests for exclusion. Additionally, the Settlement was reached through mediated arms-length negotiations, sufficient investigation and discovery allowed Class Counsel to act intelligently, and Class Counsel supports the Settlement as being in the best interests of the Class Members. Accordingly, Plaintiff respectfully requests that this Court grant Plaintiffs' Motion for Final Approval of Class Action Settlement. Defendant does not oppose this Motion.

## II.    RELEVANT BACKGROUND

### A. Factual and Procedural Background

This case involves California wage-and-hour claims against Defendant

MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

PVH Corp. Plaintiff's claims flow from the following nucleus of factual allegations:

- PVH did not consistently provide non-exempt employees with timely meal or rest breaks, as required under California Law.

- PVH did not consistently pay employees for allegedly missed meal and rest breaks.

- PVH required employees to perform additional work tasks while off-the-clock, resulting in unpaid work time.

- As a derivative result of the above allegations, PVH failed to provide accurate pay stubs and failed to pay all terminated employees the correct amount of wages earned.

Based on those factual issues, Plaintiff brought suit against Defendant in 2019, alleging the following causes of action: (1) unpaid overtime; (2) unpaid minimum wages; (3) failure to provide meal periods; (4) failure to authorize and permit rest periods; (5) failure to timely pay wages; (6) failure to provide accurate wage statements; (7) failure to indemnify for incurred business expenses; (8) an enforcement action under the Private Attorneys General Act of 2004 ("PAGA"); and (9) violations of California's Unfair Competition Law ("UCL").

Plaintiff and Defendant reached a settlement (the "Settlement") of the above claims after lengthy negotiations, executing the Stipulation on or around March 16, 2020. (Bainer Decl. ¶6; *see also* discussion *infra* Parts II.B.-C.) On May 11, 2020, Plaintiff moved for preliminary approval of the Settlement. On July 1, 2020, the Court granted Plaintiff's motion for preliminary approval.

## B. Plaintiff's Investigation of Her Claims and Class Claims

Plaintiff actively investigated and conducted discovery in this matter in order to sufficiently and intelligently assess the merits of her claims, individually and on behalf of the class, as well as evaluate the risks of proceeding to trial, and the adequacy and fairness of the Settlement. (Declaration of Matthew R. Bainer in Support of Plaintiff's Motion for Final Approval ("Bainer Decl."), ¶ 3-4.) Among other things, prior to filing her Complaint, Plaintiff's Counsel requested and was

provided a copy of Plaintiff's entire personnel file and payroll records; and Defendant provided a substantial amount of informal discovery in advance of the parties' mediation, including all relevant policy and procedure documents, data points relevant to the potential damages, and time and payroll records for all Class Members for the entire relevant time period.  Additionally, in support of the Parties' settlement negotiations and mediation session, Defendant provided data and information allowing Plaintiff to determine the average hourly rate of pay for Class Members, the total approximate number of Class Members who worked during the Class Period, the total number of former employees during the Class Period and the total number of workweeks worked by Class Members during the Class Period.  (Bainer Decl. ¶ 3.)

Plaintiff's Counsel also performed an extensive independent investigation into the claims at issue, including (1) determining the suitability of the putative class representative through interviews, background investigations, and analyses of employment files and related records; (2) researching wage-and-hour class actions involving similar claims; (3) acquiring information regarding putative Class Members' potential claims, identifying additional witnesses, and obtaining documents in support of Plaintiff's eventual Motion for Class Certification; (4) obtaining and analyzing Defendant's wage-and-hour policies and procedures; (5) researching the latest case law developments bearing on the theories of liability; (6) researching settlements in similar cases; (7) preparing valuation analyses of claims; (8) participating in a full-day private mediation session and preparing related memoranda; (9) negotiating the terms of this Settlement; (10) finalizing the Joint Stipulation of Class Action Settlement and Release; and (11) and drafting preliminary approval papers.  The document and data exchanges allowed Plaintiff's Counsel to assess the strengths and weaknesses of the claims against Defendant and the benefits of the proposed Settlement.  (Bainer Decl. ¶ 4.)

**Arm's-Length Settlement Negotiations**

After exchanging documents and conducting preliminary settlement

MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

discussions, the parties attended a mediation with Michael Dickstein, who specializes in mediating employment disputes, including wage and hour class actions. As a result of the mediation, the parties were able to reach an agreement on the principal terms of settlement. The parties continued to discuss and negotiate the remaining details over the course of several weeks. At all times, the Parties' negotiations were adversarial and non-collusive. The Settlement therefore constitutes a fair, adequate, and reasonable compromise of the claims at issue. (Bainer Decl. ¶ 5.)

## III.   THE SETTLEMENT

### A. <u>Class Definition</u>

The proposed class consists of all non-exempt employees employed by PVH Corp., PVH Retail Stores LLC, or any other subsidiary of PVH Corp. in any retail store in the state of California at any time from October 7, 2016 through the date of preliminary approval (July 1, 2020), and who did not file a timely and complete request to be excluded from the Settlement. (Stipulation,[1] ¶¶ 2.3 and 2.4)

### B. <u>Settlement Terms</u>

Plaintiff and Defendant have agreed to settle the underlying class claims in exchange for a Gross Settlement Amount of $1,300,000. The Gross Settlement Amount includes (1) settlement payments to each Class Member who does not submit a request for exclusion ("Settlement Class Member"); (2) up to $433,333 in attorneys' fees; (3) reasonable litigation costs and expenses, currently estimated not to exceed $25,000; (4) Settlement Administration Expenses of $45,000; (5) Class Representative Enhancement Payment of $5,000 to Plaintiff; and (6) a payment of PAGA penalties of $20,000, of which $15,000 will be paid to the LWDA and $5,000 will be paid to each Settlement Class Member who does not submit a request for exclusion. (Settlement Agreement ¶ 2.6, 2.10, 4.1-4.4)

---

[1] The Parties Stipulation of Settlement is attached to the Bainer Decl. as Exhibit "A".

MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

To the extent there are any uncashed or undeliverable Settlement Payment checks more than 180 calendar days after issuance, such uncashed/undeliverable amounts will be sent to cy pres recipients Bet Tzedek Legal Services (fifty (50) percent) and Legal Aid at Work (fifty (50) percent).  The two cy pres recipients were selected because they both most closely match the requirements established in the Ninth Circuit. Specifically, both Bet Tzedek Legal Services and Legal Aid at Work are nonprofit entities that provide legal services to low income workers, similarly situated to the low wage-earning class members herein, and, even more specifically, advocate on behalf of these groups for the same statutory wage violations addressed in this action. Bet Tzedek Legal Services is based in, and provides legal services in, the Los Angeles County area, whereas Legal Aid at Work is based in, and provides legal service services in, the San Francisco Bay Area. Thus, the selection of the two separate entities covers the largest geographic area where class members, and those other low wage workers similarly situated thereto, reside and work. (See, Bainer Decl. ¶ 9; Exhibits "C" and "D")
Neither Plaintiff, Defendant, Plaintiff's Counsel nor Defense Counsel have any preexisting relationship to either proposed cy pres recipient. (*Id.*)

Each Settlement Class Member's share of the Net Settlement Amount will be proportional to the number of weeks he or she worked as a Class Member during the Class Period.    (Settlement Agreement ¶4.4(E)) The Settlement Administrator will calculate Individual Settlement Payments as follows:

- Defendant will provide to the Settlement Administrator a list in Excel format of all Class Members, including each Class Member's name, social security number, last known address, and dates of employment during the Class Period.

- To determine each Settlement Class Member's estimated Individual Settlement Payment, the Settlement Administrator will divide the Net Settlement Amount by the total number of Workweeks for the entire

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Settlement Class, and then multiply that amount by the number of workweeks worked by each Settlement Class Member during the Class Period.

- The Individual Settlement Payment will be subject to Income Withholding and Employee Portion Payroll Taxes.  Defendant will pay the Employer Portion Payroll Taxes.

## C. **The Release**

In exchange for the Class Settlement Amount, Plaintiff and Class Members who do not opt out will release the Released Claims. The Released Claims are defined as all:

> "claims, rights, demands, liabilities, penalties, fines, debts and causes of action of every nature and description, whether asserted or unasserted, known or unknown, that have been or could have been asserted against Defendant that arise out of or relate to the facts, acts, transactions, occurrences, events or omissions alleged in the Action, including all claims for wages, overtime pay, uncompensated work, missed, late, or shortened meal or rest breaks, premium pay, uncompensated security checks, and all other claims of any kind for wages, penalties, interests, costs and attorneys' fees arising from the alleged violation of any provision of California law and/or federal law, including but not limited to claims based on California Labor Code sections 201, 202, 203, 204, 206.5, 218.5, 218.6, 226, 226.3, 226.7, 510, 512, 558, 1194, 1197, 1197.1, 1198, 2698 et. seq., California Code of Regulations, Title 8 Section 11000 et. seq., the applicable Industrial Welfare Commission (IWC) Wage Orders, Business & Professions Code section 17200-17208, the Private Attorney General Act (PAGA), or any related damages, penalties, restitution, disgorgement, interest or attorneys' fees, and that arose at any time from and including October 7, 2016 through and including the date of Final Approval."

Settlement Agreement ¶ 5.1.

## IV. CLASS NOTICE HAS BEEN EFFECTUATED AND COMPORTS WITH THE REQUIREMENTS OF DUE PROCESS AND RULE 23

Before the Court may grant final approval of a proposed class-action settlement, adequate notice of the settlement must be provided to the class members. Fed. R. Civ. P. 23(e)(1). Class members should be given "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice may be by United States mail or other appropriate means. *Id.* The "best notice practicable" does not require receipt of actual notice by all

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

class members in order to comport with both Rule 23 and the requirements of due process, but it often includes (as in this case) direct notice to class members who can be identified by regular mail. *See, e.g.*, *Burns v. Elrod*, 757 F.2d 151, 154 (7th Cir. 1985).

For a class certified under Rule 23(b)(3), class notice must "clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B). "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard. *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citations and quotations omitted).

The notice plan, as preliminarily approved by the Court on July 1, 2020, has been implemented by the Claims Administrator. The Claims Administrator then received from Defendant a list containing each Settlement Class Member's full name; last known address; last known home telephone number; Social Security Number; and dates of employment (collectively, "Class Information"). (Declaration of Claims Administrator in Support of Plaintiffs' Motion for Final Approval ("Claims Administrator Decl.") ¶ 5.) The Claims Administrator received Class Information for 7,808 Settlement Class Members. (Claims Administrator Decl. ¶ 7.) After receiving the Class Information, the Claims Administrator updated the Class Information after performing a search on National Change of Address database. (*Id.*) On August 14, the Notice Packets were mailed to the Settlement Class Members by first-class U.S. mail, with pre-paid postage. (*Id.*)

Fifteen Settlement Class Members timely and completely asked to be excluded from the Settlement; there have been 0 objections. (Claims

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1    Administrator Decl. 9-10.)

2         In short, the notice procedures undertaken by the Claims Administrator

3 constitute the best notice practicable under the circumstances, and fully complies

4 with Rule 23 and the requirements of due process.

5 **V.  THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL**

6         The settlement of a class action requires court approval. Fed. R. Civ. P.

7 23(e). In determining whether to grant final approval, the Court must determine

8 whether the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P.

9 23(e)(2)(C); *Staton v. Boeing Co.*, 327 F. 938, 952 (9th Cir. 2003). To assess the

10 merits of a final settlement in a class action, courts "balance a number of factors,"

11 including "the strength of the plaintiff's case; the risk, expense, complexity, and

12 likely duration of further litigation; the risk of maintaining class action status

13 throughout the trial; the amount offered in settlement; the extent of discovery

14 completed and the stage of the proceedings; the experience and views of counsel;

15 the presence of a governmental participant; and the reaction of the class members

16 to the proposed settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th

17 Cir. 1998); *see also Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003);

18 *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). The

Court considers the "settlement taken as a whole." *See Hanlon*, 150 F.3d at 1026.

19         Although the Court has broad discretion in making a final determination

20 that a class-action settlement is fair, the Court's discretion is "limited to the extent

21 necessary to reach a reasoned judgment that the [settlement] is not the product of

22 fraud or overreaching by, or collusion between, the negotiating parties, and that

23 the settlement, taken as a whole, is fair, reasonable, and adequate to all

24 concerned." *Officers for Justice*, 688 F.2d at 625. A presumption of fairness exists

25 where "the settlement is recommended by class counsel after arm's-length

26 bargaining." *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL

27 1627973, at *8 (N.D. Cal. Apr. 29, 2011) In considering whether to grant final

28 approval of a class-action settlement, the Ninth Circuit has recognized "a strong

MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Synocor ERISA Litig.*, 516 F.3d 1095, 1011 (9th Cir. 2008). In the end, "[s]ettlement is the offspring of compromise; the question [that the court] addresses is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate[,] and free from collusion." *Hanlon*, 150 F.3d at 1027.

### A. The Proposed Settlement Is Presumed To Be Fair.

The Court should begin its analysis with a presumption that the proposed Settlement is fair and should be approved. "Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair." *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) (citations omitted); *see Harris*, 2011 WL 1627973, at *8 ("An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining."). Courts find that "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 377 (9th Cir. 1995).

Here, the parties negotiated the proposed Settlement at arm's length with the assistance of an experienced mediator, Michael Dickstein. (Bainer Decl. ¶ 6.) Significant factual investigation and discovery allowed Class Counsel—who is experienced in wage-and-hour class-action litigation—to assess the strengths and weaknesses of the claims against Defendant and the benefit of the proposed Settlement. (*Id.*) During the course of the litigation, Class Counsel reviewed hundreds of pages of documents produced by Defendant, including relevant wage-and-hour policy documents, obtained a sampling of timekeeping and payroll records, and prepared a damages model based on analysis of the time and payroll data and information obtained from Defendant. (Bainer Decl. ¶ 3-5.) Plaintiff and Class Counsel therefore had adequate information to gauge the value of the Settlement Class Members' claims and assess whether the proposed Settlement is

MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

fair, adequate, and reasonable. (*See* discussion *supra* Part II.B.) As discussed further below, Class Counsel supports the Settlement because it achieves a significant result for the Settlement Class Members, particularly in light of the risks of continued litigation. (*See, e.g.*, discussion *infra* Part V.B.3.)

## B. Relevant Criteria Support Final Approval of the Settlement.

In deciding whether to grant final approval of a class-action settlement, courts must determine whether it is "fair, reasonable, and adequate" after considering whether "(a) the class representatives and class counsel have adequately represented the class; (b) the proposal was negotiated at arm's length; (c) the relief provided for the class is adequate . . . ; and (d) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). These factors are not exhaustive, however, and should be tailored to each case. *Staton*, 327 F.3d at 959; *see* Fed. R. Civ. P. 23(e)(2) 2018 advisory committee's note ("The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."). Applied to this case, the relevant criteria support final approval of the proposed Settlement.

## 1. Plaintiff and Class Counsel Have Adequately Represented the Class.

Final approval is favored because Plaintiff and Class Counsel conducted an adequate investigation and discovery prior to reaching a settlement. "A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004). The greater the amount of discovery that has been completed, the more the parties have 'a clear view of the strengths and weaknesses of their cases." *Young*, 2007 WL 951821, at *4.

Plaintiff conducted extensive investigation and discovery prior to

mediation. (*See* discussion *supra* Part II.B.) Plaintiff's counsel obtained documents and information from Defendant sufficient to realistically assess Plaintiff's claims and proceed with class certification if necessary. (Bainer Decl. ¶ 3-4; *see also* discussion *supra* Part II.B.) Plaintiff's counsel analyzed and evaluated Defendant's policy and procedure documents, time and payroll records, information from relevant witnesses, as well as conducting an independent investigation as described above. (Bainer Decl. ¶ 3-4; *see also* discussion *supra* Part II.B.) Based on the information and record developed through extensive investigation and discovery, Plaintiff's counsel was able to act intelligently and effectively in negotiating the proposed Settlement. (Bainer Decl. ¶ 7; *see also* discussion *supra* Part II.B.)

Additionally, Class Counsel was able to adequately represent the class in negotiating the Settlement as a result of Class Counsel's experience in handling similar class actions. Reliance on such recommendations is premised on the fact that "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d at 378. Class Counsel has handled dozens of wage-and-hour class-action lawsuits in both state and federal courts. (*See* Bainer Decl. ¶ 8.) Through its investigation, review of discovery materials, litigation, and the mediation, Plaintiff's counsel had an intimate understanding of the instant litigation and believes the Settlement is fair, adequate, and reasonable. (Bainer Decl. ¶ 7.)

### 2.    The Settlement Was Negotiated at Arm's Length.

Evidence that a settlement agreement is the result of genuine arm's length bargaining with a private mediator after factual discovery also supports a conclusion that the Settlement is fair. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (2016) ("We put a good deal of stock in the product of an arms-length non-collusive, negotiated resolution."); *see also In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL), 2008 WL 4820784, at *3 (N.D. Cal.

MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

Nov. 5, 2008) (mediator's participation weighs considerably against any inference of a collusive settlement. Here, the Settlement was reached after extensive negotiations, with the assistance of an experienced mediator, Michael Dickstein. The Parties continue to negotiate terms of Settlement after reaching the agreement in principle with Mr. Dickstein. These discussions were at arm's length and non-collusive, and conducted by experienced class-action counsel. Plaintiff was represented by seasoned class-action counsel who litigate wage-and-hour claims through certification and on the merits, and have considerable experience with those types of cases. (*See* discussion *supra* Part V.B.1.) Defendant was represented by Jones Day, a nationally recognized employment defense law firm. Therefore, these circumstances also favor a final determination that this Settlement is fair, adequate, and reasonable.

### 3.    The Relief Provided to the Class Is Adequate.

To determine whether the class relief is adequate, the Court should consider "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C).[2]

"An important consideration in judging the reasonableness of a settlement is the strength of the plaintiff's case on the merits balanced against the amount offered in the settlement." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 488 (C.D. Cal. 2010) (internal quotation mark omitted). Plaintiff evaluated the claims in light of the risks of continued litigation in order to determine a reasonable range of class relief. Although Plaintiff believes the class claims are strong, Defendant disputes liability and, except for settlement purposes, the appropriateness of class certification. Defendant has vigorously defended the

---

[2] There are no separate agreements for the Court to consider in granting final approval of the proposed Settlement.

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

action, and the related cases, and, absent settlement, would continue to do so. Plaintiff recognizes the risks she faces in proceeding with litigation, and that she may have encountered.

For example, although many courts have certified classes in wage-and-hour actions, some courts have disagreed, finding that wage and hour cases present too many individualized issues.[3] The risk of being denied class certification favors settlement, because when class certification is denied, there is little incentive for parties to proceed where individual damages are relatively small. *See, e.g.*, *In re Baycol Cases I & II*, 51 Cal. 4th 751, 758 (2011) (explaining that a dismissal of class claims is effectively the "death knell" of the case, despite survival of individual claims).

Moreover, Plaintiff would have to overcome Defendant's defenses on the merits, which include that Plaintiff and the proposed class were compensated for all time worked and provided meal and rest breaks in accordance with California law. Furthermore, Plaintiff's potential recovery in this action is limited by a prior

---

[3] *See Duran v. U.S. Bank Nat'l Assoc.*, 59 Cal. 4th 1, 31 (2014) (reversing a verdict from a class trial); *Ali v. U.S.A. Cab Ltd.*, 176 Cal. App. 4th 1333, 1341 (2009) (affirming denial of certification because employees' declarations attesting to having taken meal and rest breaks demonstrated that individualized inquiries were required to show harm); *Campbell v. Best Buy Stores, L.P.*, No. LA CV12-07794JAK (SH1), 2013 WL 5302217, at *11-12 (C.D. Cal. Sept. 20, 2013) (following *Brinker* and denying certification of proposed off-the-clock and rest and meal break classes due to lack of uniform policy); *Jimenez v. Allstate Ins. Co.*, No. LA CV10-08486 JAK (FFMx), 2012 WL 1366052, at *22 (C.D. Cal. Apr. 18, 2012) (denying motion to certify meal and rest break classes based on employer's practice of understaffing and overworking employees); *Gonzalez v. Officemax N. Am.*, No. SACV 07-00452, 2012 WL 5473764, at *2 (C.D. Cal. Nov. 5, 2012) (same); *Brown v. Fed. Express Corp.,* 249 F.R.D. 580, 587-88 (C.D. Cal. 2008) (denying certification of driver meal and rest period claims based on the predominance of individual issues); *Kenny v. Supercuts, Inc.*, 252 F.R.D. 641, 645 (N.D. Cal. 2008) (denying certification on meal periods claim); *Blackwell v. Skywest Airlines, Inc.*, 245 F.R.D. 453, 467-68 (S.D. Cal. 2007) (declining to certify class action because individual issues predominated when different employee stations provided different practices with respect to meal periods).

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

class action settlement which prevents any recovery prior to October 2016, and by rulings in the prior action which provide Defendant with a good faith defense to many of Plaintiff's claims in this Action.

The proposed Settlement in the amount of $1,300,000.00 is therefore reasonable when balanced against the strengths and weaknesses of Plaintiff's claims. If the putative class is not certified, the value of Plaintiff and the Class Members' individual cases would be reduced to a fraction of the Settlement value. Many Class Members would also be shut out of recovery for the wage-and-hour violations Plaintiff contends that Defendant committed. Although Plaintiff and her counsel strongly believe in the underlying merit of their claims, they recognize the challenges of proceeding.

Considering the costs, risks, and delay of trial and appeal, the effectiveness of the proposed method of distributing relief to the class, and the terms of the proposed award of attorneys' fees, the relief provided to the class is adequate.

### 4.    The Settlement Does Not Provide Preferential Treatment to Plaintiff or Any Segment of the Class.

The fourth factor for the Court to examine is whether the proposed settlement provides preferential treatment to any class member. "[T]o the extent feasible, the plan should provide class members who suffered greater harm and who have stronger claims a larger share of the distributable settlement amount." *Hendricks v. StarKist Co.*, Case No. 13-cv-007290HSG, 2015 WL 4498083, at *7 (N.D. Cal. July 23, 2015). Here, the proposed Settlement poses no risk of unequal treatment of any Settlement Class Member. Each Settlement Class Member's Individual Settlement Payment is calculated on a pro rata basis based on his or her workweeks.

The Settlement also provides for an incentive award to Plaintiff in an amount not to exceed $5,000.00, subject to Court approval. As set forth in Plaintiffs' Motion for Attorneys' Fees and Costs and Service Awards, filed concurrently herewith, this modest payment is appropriate based on the substantial

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

risk assumed by and the services undertaken by Plaintiff on behalf of the Class Members. Furthermore, the Ninth Circuit has recognized that service awards to named plaintiffs in class actions are permissible. *See Staton*, 327 F.3d at 977. Thus, the absence of any preferential treatment supports final approval.

### 5. Class Members' Reaction to the Proposed Settlement.

In assessing the fairness, adequacy, and reasonableness of the Settlement, courts also consider the reaction of the class. *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003). "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528-29 (C.D. Cal. 2004).

This factor also favors final approval. To date no class members have objected to the Settlement. (Claims Administrator Decl. ¶ 10.) Additionally, only 15, representing approximately 0.19% of the overall class, have requested exclusion. (Claims Administrator Decl. ¶ 9.) Given the overall positive reaction from Settlement Class Members, final approval of the Settlement is appropriate.

## VI. THE COURT SHOULD CERTIFY THE CLASS FOR SETTLEMENT PURPOSES ONLY

A party seeking to certify a class must demonstrate that she has met the "four threshold requirements of Federal Rule of Civil Procedure 23(a): (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy of representation." *Levya v. Medline Indus., Inc.*, 716 F.3d 510, 512 (9th Cir. 2013). Once these prerequisites are satisfied, the Court must consider whether the proposed class can be maintained under at least one of the requirements of Rule 23(b). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). Plaintiff, here, seeks certification pursuant to Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting

MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Given that the elements of liability need not be proven and for settlement purposes, the proposed class satisfies each of these requirements.

### A. The Proposed Class Is Sufficiently Numerous.

The numerosity requirement is satisfied when "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The numerosity requirement is not tied to any fixed numerical threshold, but courts generally find the numerosity requirement satisfied when a class includes at least 40 members. *Rannis v. Recchia*, 380 F. App'x 646, 650-51 (9th Cir. 2010); *see also Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1121 (E.D. Cal. 2009) (numerosity presumed at 40 class members). A reasonable estimate of the number of purported class members is sufficient to meet the numerosity requirement. *In re Badger Mountain Irrigation Dist. Sec. Litig.*, 143 F.R.D. 693, 697 (W.D. Wash. 1992). Here, the proposed class consists in excess of 7,700 persons. (Claims Administrator Decl. ¶ 11.) Thus, the class is sufficiently numerous so as to make joinder impracticable.

### B. Common Questions of Law and Fact Predominate.

The commonality requirement is also met for settlement purposes. In this regard, Plaintiffs are not required to show commonality on *every* factual and legal issue; rather, "for purposes of Rule 23(a)(2), even a single common question will do." *Wal-Mart Stores, Inc.*, 564 U.S. at 359 (internal quotations and alterations omitted). Further, courts have found that "[t]he existence of shared legal issues with divergent factual predicates is sufficient, to satisfy commonality under Rule 23 as is a common core of salient facts coupled with disparate legal remedies within the class." *Smith v. Cardinal Logistics Mgmt. Corp.*, No. 07-2104 SC 2008 WL 4156364, at *5 (N.D. Cal. Sept. 5, 2008). Individualized or deviating facts will not preclude class treatment if most class members were subjected to a policy

in a way that gives rise to consistent liability or lack thereof. *See Arrendondo v. Delano Farms Co.*, No. CV-F 09-1247 LJO DLB, 2011 WL 1486612, at *15 (E.D. Cal. Apr. 19, 2011).

Importantly, "whether a proposed class is sufficiently cohesive to satisfy Rule 23(b)(3) is informed by whether certification is for litigation or settlement. A class that is certifiable for settlement may not be certifiable for litigation if the settlement obviates the need to litigate individualized issues that would make a trial unmanageable." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 558 (9th Cir. 2019); *see also Amchem Prods.,* 521 U.S. 591, 618-20 (1997).  Thus, where the matter is being settled, a showing of manageability at trial is unnecessary. *Id*.

Commonality is satisfied in this case.  Plaintiff contends that her and the Settlement Class Members' claims arise from common, uniform practices which involve common questions of law and fact, including but not limited to: (1) whether employees performed work off the clock as a result of Defendant's practice of requiring its employees to submit to security checks (2) whether employees were not provided with timely meal and rest breaks as a result of the security checks; (3) whether employees were required to perform additional tasks while off the clock; (4) as a result, whether Defendant willfully failed to pay all wages owed to employees at the time of separation, failed to provide accurate wage statements and maintain required records; and (5) whether Defendant committed these or other unfair and unlawful business practices in violation of Business & Professions Code § 17200.  As Plaintiff contends Defendant's policies and practices, and the questions of law and fact they raise, apply uniformly to all Class Members, certification is appropriate for settlement purposes.[4]

---

[4] The Ninth Circuit recently confirmed in *In re Hyundai & Kia Fuel Economy Litigation* that the relaxed predominance standard is met where a settlement concerns a "cohesive group of individuals [who] suffered the same harm in the same way because of the [defendant's] alleged conduct.  926 F.3d at 559. Because this is not a matter wherein "individual stakes are high and disparities among class members great," common questions predominate.  *Id.*

MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

1    **C. Plaintiff's Claims Are Typical of Those of the Class.**

2    "Like the commonality requirement, the typicality requirement is

3    'permissive.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010). The

4    typicality requirement is satisfied where the named plaintiff is a member of the

5    proposed class and her claims are "reasonably coextensive with those of the absent

6    class members," though "they need not be substantially identical." Fed. R. Civ. P.

7    23(a)(3); *Hanlon*, 150 F.3d at 1020; *Hanon v. Dataprods. Corp.*, 976 F.2d 497, 508

8    (9th Cir. 1992).  Typicality turns on "whether other members have the same or

9    similar injury, whether the action is based on conduct which is not unique to the

10   named plaintiffs, and whether other class members have been injured by the same

11   course of conduct." *Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 984 (9th Cir.

12   2011) (quoting *Hanon*, 976 F.2d at 508).

13   Here, Plaintiff contends that she and all non-exempt employees of Defendant

14   were subject to the same allegedly non-compliant policies and practices.  For

15   example, Plaintiff alleges that Defendant failed to provide her and the Class

16   Members lawful meal and rest breaks and associated premium pay, failed to pay all

17   overtime and minimum wages due, failed to timely pay wages and associated

18   waiting time penalties, and failed to issue accurate wage statements.  As a result,

19   Plaintiff contends that she and the Class Members suffered the same or similar

20   injuries, resulting from the same or similar conduct by Defendant.  The proposed

21   class thus meets the typicality requirement for settlement purposes.

22   **D. Plaintiff and Her Counsel Adequately Represented the Settlement**

23   **Class Members.**

24   A class representative must be able to "fairly and adequately represent the

25   interests of the class." Fed. R. Civ. P. 23(a)(4).  This requirement is satisfied if (1)

26   the proposed representative Plaintiffs does not have conflicts of interest with the

27   proposed class, and (2) Plaintiff is represented by qualified and competent

28   counsel. *Hanlon*, 150 F.3d at 1020.  There are no conflicts between Plaintiff and

her counsel and the Class Members. Plaintiff has worked closely with her counsel throughout the case to ensure that the putative class is adequately represented. Moreover, Plaintiff and her counsel have shown they will vigorously represent the interests of the Class Members and have sufficient resources to enable them to vigorously pursue the claims on behalf of the class. Further, as described above, Plaintiff's Counsel is experienced in wage-and-hour class litigation and are qualified to serve as class counsel. (*See* discussion *supra* Part V.B.1.)

### E. A Class Action Is a Superior Method of Adjudication.

Rule 23(b)(3)'s superiority requirement is satisfied where "classwide litigation of common issues will reduce litigation costs and promote greater efficiency," or where "no reasonable alternative exists." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996). In the context of a class action settlement, "manageability is not a concern [because …] by definition, there will be no trial." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d at 556-67. With 23,767 Settlement Class Members, and in light of the predominance of common legal and factual issues, a class action is a superior method of adjudication in this context. Additionally, although the value of individual claims is not insignificant, the amount in controversy is not nearly enough to incentivize individual action. *See Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1176 (9th Cir. 2010). The class action device therefore provides the superior procedural vehicle to resolve this controversy.

Accordingly, the class should be finally certified for settlement purposes.

### VII. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant final approval of the Settlement. Defendant does not oppose Plaintiff's request.

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1   DATED:  December 4, 2020              **THE BAINER LAW FIRM**

2

3                                         By:    /s/ Matthew R. Bainer
                                                MATTHEW R. BAINER
4                                               Attorneys for Plaintiffs

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT